UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

Redacted,
IN THE MATTER OF M.M.,

                Plaintiff,

-against-

**THE NEW YORK STATE COURT OF APPEALS, THE STATE OF NEW YORK SUPREME COURT, APPELLATE DIVISION THIRD JUDICIAL DEPARTMENT, and THE ATTORNEY GRIEVANCE COMMITTEE OF THE SUPREME COURT, APPELLATE DIVISION, THIRD JUDICIAL DEPARTMENT,**

                Defendants.

**VERIFIED COMPLAINT**

Civil Action No. _____

1:21-cv-49 (MAD/CFH)

---

Plaintiff Redacted, by and through his attorneys Cabaniss Casey LLP, with offices located at 4 Tower Place Suite 100, Albany, New York 12203 hereby complains of Defendants as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff seeks intervention and declaratory judgment of this Court in relation to improper, illegal, and unconstitutional professional discipline imposed upon him by the Appellate Division Third Judicial Department by Memorandum and Order dated January 18, 2018 (hereinafter "Memorandum and Order").

2. Plaintiff brings this application to this Court as the New York State Courts have blocked every avenue of review, resulting in the denial of significant statutory and constitutional rights including, but not limited to, violation of Plaintiff's rights to substantive and procedural due process.

3. Each and every averment set forth with this Complaint is made in connection with every other statement set forth herein unless stated in alternative.

**JURISDICTION**

4. Jurisdiction of this Court arises under 28 U.S.C. §§ 1331, 1337, 1343(a); 42 U.S.C. §§ 1983, 1985, and 1988; and 28 U.S.C. § 2201.

1

## SUMMARY OF CLAIMS/CAUSES OF ACTION

5. Plaintiff asserts the following claims, causes of action against Defendants in relation to the following grounds:

   a) Violation of Due Process Clause of the 14th Amendment of U.S. Constitution and violation of Due Process Rights Article 1 § 6 of the N.Y.S. Constitution.

   b) Violation of N.Y.S. Judiciary Law §90(8).

   c) Declaratory of constitutionality of 22 NYCRR 1200 Rule 1.7 and Rule 8.4 as applied for vagueness.

   d) Declaration that the Memorandum and Order was not supported by preponderance of evidence or substantial evidence.

   e) Declaration that the Appellate Division violated Plaintiff's right to privacy in relation to private discipline in violation of §90 (100 of the N.Y.S. Judiciary Law, 22 NYCRR §1240.2(b), §1240.18, and the former 22 NYCRR §806.4(c)(5).

## SUMMARY OF RELIEF SOUGHT

6. Plaintiff seeks the following relief:

   a) An Order directing that the discipline of Plaintiff as set forth in the Memorandum and Order be struck of record with publication revoked and/or sealed; or, alternatively, an Order compelling the New York State Court of Appeals to hear Plaintiff's appeal of the Memorandum and Order; or, in the alternative,

   b) An Order certifying the questions raised herein to the Court of Appeals for determination, and

   c) An Order granting declaratory judgment determining that Plaintiff did not violate 22 NYCRR 1200 Rules 1.7(a)(1) and Rule 8.4 (d) or any other section of law, rule, or regulation and

   d) An Order awarding all costs and disbursements, including but not limited to reasonable attorney's fees, incurred by Plaintiff in defense of the underlying disciplinary proceedings and in prosecution of the within action and

   e) An Order Granting such other and further relief as this Court deems just fair and proper.

**PARTIES**

7. Plaintiff, Redacted, is a natural person residing in the State of New York, County of Albany, who, for all relevant periods, is a licensed attorney admitted to practice before the Courts of the State of New York, the federal Courts of the Northern District of New York, and the United States Supreme Court.

8. Defendants the New York State Court of Appeals, The State of New York Supreme Court, Appellate Division Third Judicial Department, and its Attorney Grievance Committee constitute the judicial branch of the New York State government as established by Article VI of the New York State Constitution and are entrusted with the admissions to and regulation of the practice of law in the State of New York pursuant to N.Y.S. Judiciary Law §90.

9. At all times relevant herein, the conduct of the Defendants was and remains subject to 42 U.S.C. §§ 1983, 1985, 1986 and 1988.

**VENUE**

10. Venue is proper in the Northern District of New York as all parties are located in Albany County, New York, and all conduct relating to the within proceeding occurred in Albany County, State of New York.

**BACKGROUND**

11. This case involves the improper discipline of an attorney in violation of state and federal law by the Courts of the State of New York embodied collectively as the named Defendants.

12. The conduct for which Plaintiff was disciplined, although not specified in the Memorandum and Order, arose at a time when Plaintiff was not acting as an attorney to any person and did not render legal advice or counsel to any person; it involved a conversation between friends

which occurred only after Plaintiff and the other participants acknowledged in writing that it was not a conversation between individuals and their attorney.

13. Plaintiff is an attorney duly licensed to practice law in the State of New York since 1994. In both his professional and personal life, the Plaintiff has embraced notions of justice, fairness, kindness, and good will. The discipline meted upon him arises out of Plaintiff's actions to promote these ideals.

14. Plaintiff was a longtime friend of Ronald G. and Kathy G. (collectively "Gs") and with Walter R. and Amy R. (collectively "Rs"), such friendship extending over at least two decades. Walter R. is the son of Kathy G.  The Rs have two minor children.

15. Over the years, Plaintiff was also family attorney for members of the G. and R. clan. Plaintiff had represented Walter R. in an employment fraud case in 2008, a felony assault case in 2014, and a criminal contempt case in 2014, which arose out of the assault case.  Plaintiff defended Amy R. in a vehicle and traffic matter in 2014 and represented the Rs in the purchase of their home.  He also represented Ronald G. in connection with a bankruptcy filing. Plaintiff's representation of the Rs and Ronald G. were all pursuant to narrow written retainer agreements, none of which involved the custody of the R. children or the relationship between the Gs and the Rs. At all times, Plaintiff clearly communicated that he could never represent the interests of one to the detriment of any of the others.

16. The initial facts leading to the disciplinary proceeding are tragic. In May of 2014, Amy R. attempted to commit suicide, but fortunately she survived. In September of 2014, both Walter R. and Amy R. attempted suicide. They dropped their children off with the Gs, went to a hotel room, and tried to kill themselves. After a frantic search, they were located and revived. Shortly thereafter, while the Rs were hospitalized and recovering from their attempt to end their

lives, the Gs obtained a power of attorney that allowed them to act as *in loco parentis* for the R. children. Plaintiff was not involved in the procuring or drafting of the power of attorney form. Nor was Plaintiff involved in the decision by the parties to execute it. He did notarize the Gs' signatures, a purely ministerial act.

17. From the time of the September 2014 suicide attempt until the November 6, 2014 meeting, the children resided with the Gs. The Rs saw the children daily but returned them to the Gs each evening. At no time during this period did the Rs seek return of their children. Over that same period of time the Gs and Rs would occasionally speak to Plaintiff, not as an attorney, but as a friend, about their concerns for the children and the custodial arrangement with the R. children. Plaintiff provided no legal advice or counsel to the anyone in connection with the custody of the children.

18. Upon information and belief, on or about September 15, 2014, the Gs filed an emergency child custody petition in Albany County Family Court seeking custody of the R. children. Plaintiff was not involved in the Family Court proceeding. Any information relevant to the custody proceedings was only acquired after the fact and was obtained primarily in connection with Plaintiff's defense of the underlying petition for discipline.

19. Upon information and belief, the Gs filed their custody petition *pro se*, while the Rs were still hospitalized and recovering from the suicide attempt. At this time, the children were living with the Gs.

20. Upon information and belief, on or about October 30, 2014, communications between the Gs and the Rs deteriorated. They spoke in passing with Plaintiff of their discord. It was not uncommon for members of the family to come by the Plaintiff's office socially or for the

Plaintiff to be at the home of the family members for holiday celebration or baking of cookies, a hobby all shared.

21. Plaintiff saw the tragedy of a family breaking up. He also observed at the time that their frustration was borne out of communication difficulties, and not of actual disagreement. On his own initiative, Plaintiff invited the Gs and the Rs to his office on November 6, 2014 after the close of business to facilitate dialogue between his longtime friends. It was a location chosen of convenience, and not because it was a law office. (Plaintiff's home was under construction at the time and lacked such amenities as walls.)

22. In preparation for the conversation, Plaintiff prepared a few talking points based on what he observed in casual conversation with the Gs and the Rs. For convenience, he used excerpts of a standard form settlement agreement; it was a rough and randomly numbered document. At some point during the evening's conversation, he shared the outline with the parties.

23. It is undisputed that neither the Gs nor the Rs asked Plaintiff to become involved in the custody matter. None of them asked him to draft any type of agreement. None of them retained Plaintiff to provide any legal services with respect to the children. Plaintiff did not request or seek compensation. None of them were billed. None of them paid the Plaintiff any fees for their meeting and discussion on November 6, 2014.

24. Plaintiff was absolutely clear that his involvement was only as a friend and that he was not talking to them as an attorney. To emphasize this point, he provided both the Gs and the Rs with a written disclosure stating that he did not represent any of them in connection with the subject matter of the evening conversation. He was speaking with them not as an attorney, but rather as a facilitator and friend to help them through their conversation.

25. Both the Gs and the Rs signed the disclosure and the parties retired to a table to continue their conversation about the children and the family. This ultimately resulted in discussion of the Plaintiff's proposal. The proposal essentially memorialized the custodial arrangement as it existed on that day, with the anticipation that the children would return to the Rs' care when it was therapeutically appropriate. Concern for the children's welfare was the overarching consideration. At the time, the Rs were visiting with the children daily and were not seeking custody. The only issue of concern was the breakdown of their communications, not their desired outcome. Prior to the suicide attempt, the R. children and the Rs had resided with the Gs and the children had bedrooms in the Gs' house. Under the proposed agreement the parties retained joint legal custody.

26. At the meeting on November 6, 2014, Plaintiff explained his thoughts behind each item in the proposal. He hoped the proposal would be a catalyst for discussion. At the end of the meeting, all the parties signed the proposed agreement to Plaintiff's surprise. Plaintiff recommended that they seek independent counsel before signing and added that to the proposed agreement, so it was absolutely clear that he was not representing anyone at the table.

27. Neither the proposed agreement, nor the discussion on the evening of November 6, 2014, was obtained by Plaintiff in the course of his representation of Walter R., Amy R., or Ronald G. in the unrelated matters.

28. Because the proposal embodied their present and working arrangement and contemplated a therapeutic approach to the children's return to residency with their parents, the parties decided they wanted to sign it as an agreement; Plaintiff advised both the Gs and the Rs that they had the right to have the agreement reviewed by independent counsel. This was done both orally and in writing. It is initialed by the parties.

29. The only advice given to the parties was that they could benefit from talking to each other, because they would likely be happier with any decision they reach, as opposed to one imposed upon them by a Court. This is the very same advice virtually every judge gives to every party in litigation. It is generic and instructional and cannot be imputed to constitute legal representation or legal counsel.

30. That night, after the meeting, Walter R. thanked Plaintiff for his efforts in writing the proposal that was agreed to by the parties.

31. After the meeting, when the Rs and Gs had questions about the agreement, Plaintiff reminded them that he was not their attorney and that they should seek advice of independent counsel.

32. The agreement signed by the Rs and Gs on November 6, 2014 was never recognized by the courts. It had no impact on the Family Court proceeding between the Rs and Gs. Ultimately, within days, the parties entered the mire of Family Court. It was learned during the course of the disciplinary proceeding, that the Rs and their attorney consented to an order granting them a mere five hours of supervised parenting time with their children each week, far less than the liberal and frequent (daily) unsupervised time they were enjoying at the time of the November 6, 2014 agreement.

33. On or about January 19, 2017, the Defendant Attorney Grievance Committee filed a Petition alleging that Plaintiff's conduct on November 6, 2014 violated the New York Rules of Professional Conduct (22 NYCRR Part 1200.0): specifically, Rule 1.7(a)(1) – Conflict of interest – current clients; and Rule 8.4 (d) – Conduct prejudicial to the administration of justice.

34. Plaintiff filed an Answer to the Petition on March 9, 2017 denying the allegations of misconduct in the Petition.

35. The Committee and Plaintiff served their respective Statements of Disputed/Undisputed Fact and a hearing was conducted on June 28 and 30, 2017.

36. The Referee issued a written report setting forth his findings and recommendations pursuant to 22 NYCRR §1240.8(b)(1). In his report, the Referee found that Plaintiff violated Rules of Professional Conduct, Rules 1.7(a)(1) and 8.4(d). Contrary to the evidence and the law, the Referee imputed an attorney-client relationship to the Plaintiff and all parties at the table. The Referee further found that Plaintiff provided legal representation to the Rs and Gs at the meeting on November 6, 2014, that he acted as their attorneys during that meeting, and that the parties had conflicting interests.

37. On January 18, 2018, the Appellate Division, without making factual findings, entered the Memorandum and Order imposing the discipline of censure with additional conditions, including continuing education and the passage of standardized ethics examination. Redacted Redacted

38. In that same Memorandum and Order, the Appellate Division wrongfully disclosed, into the public record, Plaintiff's protected confidential information in violation of N.Y.S. Judiciary Law §90(10), 22 NYCRR §1240.2(b), §1240.18 and the former 22 NYCRR §806.4(c)(5).

39. Judiciary Law §90(8) assures a right of appeal to an attorney disciplined by the Appellate Division. Under the statute, such appeal is to be made to the Court of Appeals.

40. Plaintiff timely noticed an appeal to the Court of Appeals as a matter of right; however, the Court of Appeals rejected the appeal without decision.

41. Plaintiff then timely sought leave to appeal to the Court of Appeals, and such application was denied as "untimely" in violation of statute and case law.

42. Finally recognizing that the procedural scheme for discipline of attorneys as implemented by the Office of Court Administration (22 NYCRR §1240) is similar to the hearing process for other professionals (8 NYCRR Part 83.4 [Teachers]; 8 NYCRR Part 17.8 [Doctors, Architects, Nurses, Psychologists, Accountant, etc.]; 14 NYCRR 831.6 [Substance Abuse Treatment Professionals]), Plaintiff sought review of the proceeding under CPLR Article 78 in the Supreme Court consistent with the statute; rather than transferring the review to the Court of Appeals pursuant to CPLR §325, the Supreme Court dismissed the Petition stating that the proper venue for review of the Appellate Division Decision was the Court of Appeals.

43. Plaintiff has been blocked from access to appeal of the erroneous determination of the Appellate Division.

## ON THE PARADOXES AND CONTRADICTIONS IN THE REGULATION OF THE PRACTICE OF LAW AND ATTORNEY DISCIPLINE, GENERALLY

44. The New York State Legislature vested the administration of the practice of law in the Courts, delegating the power to regulate the conduct of attorneys in the Supreme Court and the discipline of attorneys in the Appellate Division. Judiciary Law § 90(2).

45. This authority includes rule making, regulation, administration, and disciplinary adjudication.

46. The statutes, rules and regulation do not affirmatively indicate whether the process is civil, administrative, or criminal in nature.

47. The regulation of attorney conduct and the discipline of attorneys is fundamentally an administrative process.

48. At the same time, the Courts have held that the administrative process, with the attendant potential of destroying an attorney's reputation and livelihood, is "quasi-criminal" in nature.

49. In 2009, the Rules of Professional Conduct were adopted and implemented. 22 NYCRR Part 1200. The Preamble to the Rules of Professional Conduct, at para. [6] provides that the rules are "rules of reason", and that "[t]hey should be interpreted with reference to the purposes of legal representation and of the law itself". One of the stated purposes is to "define proper conduct for purposes of professional discipline". The Preamble goes on to state at para. [9]: [M]ost of the duties flowing from the client-lawyer relationship attach only after the client has requested the lawyer to render legal services and the lawyer has agreed to do so."

50. When the Rules of Professional Conduct were implemented, many of the rules and principles of the former Code of Professional Responsibility were carried over. The Preamble to the Code stated: "The Code of Professional Responsibility points to way to the aspiring and provides standards by which to judge the transgressor". While this specific language was not incorporated into the Rules of Professional Conduct, it nevertheless captures an important concept, namely the distinction between aspirational ideals that lawyers should be committed to and specific standards that give notice to attorneys as to what type of conduct may or may not result in attorney discipline. These aspirational ideals are by their very nature broad, undefined, and, at times, vague.

51. The Rules of Professional Conduct are not intended to be a penal code, but oftentimes are applied by the Grievance Committees and the Appellate Divisions to that effect. This underscores the importance under principles of due process that when attorney discipline proceedings are instituted, they must be based upon and supported by evidence that the attorney violated a specific standard. This ensures that the accused attorney can be charged with knowledge, prior to engaging in the action, that the conduct would violate the standard. Attorney disciplinary proceedings should not be based upon a violation of what is in reality an aspirational ideal

contained in the Rules of Professional Conduct. That leaves too much discretion in the hands of the prosecuting attorneys with the Grievance Committees.

52. Conspicuously absent from <u>Judiciary Law</u> §90, 22 NYCRR §1240, and the laws of the State of New York generally, are any provisions for access to review or appeal of the Appellate Division's disposition of attorney disciplinary proceedings other than the statement of absolute right of appeal to the Court of Appeals set forth in <u>Judiciary Law</u> §90(8).

### AVERMENTS COMMON TO ALL DUE PROCESS CLAIMS SET FORTH HEREIN

53. Plaintiff has a property interest in his license to practice law and his professional reputation.

54. Section 1 of the 14th Amendment to the United States Constitution prohibits impairment of rights to life, liberty, or property without due process of law.

55. In New York, this protection is further set forth in Article 1 §6 of the New York State Constitution.

56. The requirements of due process of law include at a minimum:

    a) An impartial and disinterested tribunal.

    b) Notice of the proposed action and the grounds asserted for it.

    c) Opportunity to present reasons why the proposed action should not be taken.

    d) The right to present evidence, including the right to call witnesses.

    e) The right to know opposing evidence.

    f) The right to cross-examine adverse witnesses.

    g) A decision based exclusively on the evidence presented.

    h) Opportunity to be represented by counsel.

    i) Requirement that the tribunal prepare a record of the evidence presented.

    j)  Requirement that the tribunal prepare written findings of fact and reasons for its decision.

    k)  An avenue of appeal/review.

57.  The subject January 18, 2018 Memorandum and Order of the Appellate Division did impair, abridge and damage Plaintiff's license to practice law and professional reputation as is evidenced, at a minimum, by: the affirmative mention of the discipline in multiple proceedings in state and federal courts; a conspicuous decline in Plaintiff's client base; and, upon information and belief, the improper discipline imposed by the Appellate Division resulted in the denial of a teaching position in a law school.

<b>AS AND FOR A FIRST CAUSE OF ACTION-<br>VIOLATION OF DUE PROCESS CLAUSE OF<br>14th AMENDMENT</b>

58.  Plaintiff restates each and every averment set forth in paragraphs 1 - 57 herein.

59.  The actions of the Defendant Grievance Committee, which were adopted by the Defendant Appellate Division, violated the Plaintiff's due process rights under the 14th Amendment in at least the following ways, among others.

60.  The Notice of Petition was defective, and the entirety of the proceeds were tainted, because the subject provisions of the Rules of Professional Conduct alleged to constitute misconduct, 22 NYCRR §1200 R-1.7 (a)(1) and 8.4(d), are void for vagueness, both facially and as applied to Plaintiff's proceedings. Application of a law or rule which is void for vagueness denies the accused due process of law as it fails to give sufficient notice of prohibited conduct. Due process forbids punishment of conduct where reasonable men/women would differ in their interpretation of a rule as written. *In re Ruffalo* 390 U.S. 544, 555-56 (1968).

61.  Plaintiff's right to due process of the law was denied by the tribunal's use of a preponderance of the credible evidence standard of proof, as opposed to, at a minimum, the clear

and convincing evidence standard that the America Bar Association Model Enforcement Rules endorses.

62. Plaintiff's right to due process of the law has been denied by the failure of the tribunal to set forth proper or sufficient findings of fact and reasons for its determination.

63. Plaintiff's right to due process of the law has been denied because the Memorandum and Order does not contain proper or sufficient findings of fact and reasons for its determination.

64. The denial of due process culminating in the Memorandum and Decision damaged Plaintiff's license to practice law, professional reputation, and law firm. Plaintiff seeks such remediation and compensation as this Court deems just fair and proper.

65. As a consequence of these violations of Plaintiff's right to due process, Plaintiff requests injunctive, declaratory, and the other relief specified in paragraph 6 above.

### AS AND FOR A SECOND CAUSE OF ACTION- VIOLATION OF DUE PROCESS CLAUSE OF 14th AMENDMENT

66. Plaintiff restates each and every averment set forth in paragraphs 1 - 65 herein.

67. The right to appeal is a fundamental element of due process, especially when the Legislature designates such right to appeal as part and parcel of the process due to the Plaintiff under Judiciary Law §90(8).

68. The Defendant Courts have denied Plaintiff's right to appeal the subject decision.

69. Plaintiff timely and properly attempted to appeal the subject decision to the Court of Appeals as is his right under the statute.

70. The Courts improperly blocked Plaintiff's efforts to exercise his right to appeal pursuant to Judiciary Law §90(8)

71. Plaintiff has been denied Due Process of the Law by denial of the exercise of his right to appeal the Memorandum and Order.

72.     The denial of due process culminating in the Memorandum and Order and denial of appeal thereof damaged Plaintiff's license to practice law, professional reputation, and law firm. Plaintiff seeks such remediation and compensation as this Court deems just fair and proper.

73.     As a consequence of these violations of Plaintiff's right to due process, Plaintiff requests injunctive, declaratory, and the other relief specified in paragraph 6 above.

### AS AND FOR A THIRD CAUSE OF ACTION- VIOLATION OF JUDICIARY LAW §90(8)

74.     Plaintiff restates each and every averment set forth in paragraphs 1-73 herein.

75.     At all relevant times, Plaintiff was and remains an attorney duly licensed to practice law in the State of New York.

76.     Plaintiff was the subject of the aforementioned disciplinary proceedings.

77.     The Appellate Division rendered the subject Memorandum and Order.

78.     Judiciary Law §90(8) guarantees Plaintiff the right to appeal such decision to the Court of Appeals.

79.     Plaintiff timely noticed such appeal as a right but was denied the right to appeal.

80.     Plaintiff timely made application for leave to appeal but such leave was denied.

81.     Plaintiff made alternate application for review of the appeal as the product of a determination of the Court in its role in the regulation and administration of the practice of law/discipline of attorneys with request for transfer of same to the Court of Appels consistent with CPLR §325; that application was denied.

82.     Plaintiff has been denied his right to appeal as guaranteed by Judiciary Law §90(8)

83.     The violation of Plaintiff's right to appeal damaged Plaintiff's license to practice law, professional reputation, and law firm. Plaintiff seeks such remediation and compensation as this Court deems just fair and proper.

## AS AND FOR A FOURTH CAUSE OF ACTION- DECLARATORY JUDGMENT, PLAINTIFF DID NOT VIOLATE 22 NYCRR §1200 R. 1.7(b)

84. Plaintiff restates each and every averment set forth in paragraphs 1 - 83 herein.

85. The Court is empowered to render declaratory judgment. 28 U.S.C. 2201.

86. Plaintiff seeks declaratory judgment determining that Plaintiff did not violate 22 NYCRR §1200 R.1.7(b) as a matter of law upon the Court's own review or upon certification of such question to the Court of Appeals for determination.

87. With respect to the subject matter of the gathering which was the subject of the Memorandum and Order, the G. and R. participants were not clients of the Redacted Law Firm PC or Plaintiff personally.

88. The Gs and Rs were informed, and they affirmatively acknowledged in writing, that their conversation with Plaintiff that day as not in the context of an attorney-client relationship.

89. Plaintiff's conduct did not create an attorney-client relationship on the child custody matters.

90. Plaintiff provided no advice or counsel to the Rs at the gathering.

91. Plaintiff did not represent either the Gs or the Rs at the gathering.

92. Plaintiff was not involved in any manner in the assertion of claims by the Rs against the Gs or the Gs against the Rs.

93. Informed consent to representation was not required as no representation occurred. However, the parties acknowledged in an informed manner that they were not represented by the Plaintiff or his firm and did so in writing not once but twice, and during the second such reminder, they were also advised in writing, which they initialed and signed, that they should review matters with independent counsel.

16

94.     In sum and substance, because no attorney-client relationship existed with respect to a specific matter and no legal advice or counsel was given, no violation of 22 NYCRR §1200 R1.7(b) can be found.

95.     The unsubstantiated Memorandum and Order damaged Plaintiff's license to practice law, professional reputation, and law firm. Plaintiff seeks such remediation and compensation as this Court deems just fair and proper.

### AS AND FOR A FIFTH CAUSE OF ACTION- DECLARATORY JUDGMENT, PLAINTIFF DID NOT VIOLATE 22 NYCRR §1200 R. 8.4(d)

96.     Plaintiff restates each and every averment set forth in paragraphs 1 - 95 herein.

97.     The Court is empowered to render declaratory judgment. 28 U.S.C. 2201.

98.     Plaintiff seeks declaratory judgment determining that Plaintiff did not violate 22 NYCRR §1200 R.8.4(d) as a matter of law upon the Court's own review or upon certification of such question to the Court of Appeals for determination.

99.     Plaintiff did not engage in any conduct that was prejudicial to the administration of justice.

100.    Plaintiff, acting in his capacity as friend to the participants, encouraged them to talk to each other where they appeared to be in agreement.

101.    He did so as a friend. He properly informed them that he was not their attorney in connection with the custody matters, a fact which they acknowledged in writing at least twice.

102.    He did not give any legal advice or counsel to them in relation to the subject they were discussing.

103.    They were not impaired or unable to comprehend the disclaimer or representation or the content or context of discussions.

104. At no time known to Plaintiff was the competency of either the Rs or the Gs in question; all knew they were not represented by Plaintiff in the custody matter.

105. The Gs and Rs were informed and affirmatively acknowledged in writing their conversation with Plaintiff that day as not in the context of an attorney-client relationship.

106. Plaintiff's conduct did not create an attorney-client relationship on the child custody matters.

107. Plaintiff provided no advice or counsel to the Rs at the gathering.

108. Plaintiff did not represent either the Gs or the Rs at the gathering.

109. Plaintiff was not involved in any manner in the assertion of claims by the Rs against the Gs or the Gs against the Rs.

110. Plaintiff merely encouraged conversation as it is well accepted that individuals are usually happier when they reach their own resolution than when they have a resolution imposed on them, a concept which every judge suggests to every litigant and potential litigant. Here it was particularly apropos as the Plaintiff observed that they seemed to be in agreement but not communicating such agreement with each other.

111. Plaintiff did not violate Rule 8.4, as it is not conduct prejudicial to the administration of justice to suggest that people talk to each other rather than fight.

112. No violation of 22 NYCRR §1200 R8.4(d) can be found at any level.

113. The unsubstantiated Memorandum and Order damaged Plaintiff's license to practice law, professional reputation and law firm. Plaintiff seeks such remediation and compensation as this Court deems just fair and proper.

WHEREFORE, the Plaintiff, Redacted , respectfully requests the following relief:
   a) An order and judgment declaring that with respect to Plaintiff, Defendants did engage in:

   i. Violation of Due Process Clause of 14th Amendment of U.S. Constitution;

   ii. Violation of Due Process Rights Article 1 § 6 of the NYS Constitution

   iii. Violation of N.Y.S. Judiciary Law §90(8).

b) An order and judgment declaring 22 NYCRR 1200 Rules 1.7(a)(1) and 8.4(d) as applied unconstitutional and void for vagueness;

c) An order and judgment declaring that the Memorandum and Order of the Appellate Division is not supported by preponderance of evidence or substantial evidence;

d) An order and judgment declaring that the Appellate Division violated Plaintiff's right to privacy in relation to private discipline in violation of §90(10) of the N.Y.S. Judiciary Law, 22 NYCRR §1240.2(b), §1240.18 and the former 22 NYCRR §806.4(c)(5);

e) An order and judgment directing that the discipline of Plaintiff be struck of record with publication revoked and/or sealed; or compelling the New York State Court of Appeals to hear Plaintiff's appeal of the Memorandum and Order;

f) An order certifying the questions raised herein to the Court of Appeals for determination to the extent and for the purposes deemed appropriate by the Court;

g) An award of all costs and disbursements, including but not limited to reasonable attorney's fees, incurred by Plaintiff in defense of the underlying disciplinary proceedings and in prosecution of the within action; and

h) Such other and further relief as this Court deems just, fair and proper.

Dated: January 15, 2021

                _/s/ David B. Cabaniss_
                David B. Cabaniss
                Bar Roll No. 104256
                Attorney for Plaintiff **Redacted**
                Cabaniss Casey LLP
                4 Tower Place Suite 100
                Albany, New York 12203
                (518) 621-4406

VERIFICATION

STATE OF NEW YORK )
                  )ss.:
COUNTY OF ALBANY  )

Redacted being duly sworn, deposes and says that he is the Plaintiff in the above-named proceeding and that the foregoing Complaint is true to his own knowledge, except as to matters therein stated to be alleged on information and belief and as to those he believes it to be true.

_____
Redacted, Plaintiff

Sworn to before me by way of video conference in accordance with New York State Executive Orders No. 202.7 & 202.72 on this 15th day of January, 2021.

_____
Notary Public

DAVID B. CABANISS
Notary Public, State of New York
Qualified in Albany County
No. 02CA5049496
Commission Expires Sept. 18, 2021